### PEYTON v. BROCK.

### No. 17067.

Court of Appeal of Louisiana. Orleans.

Dec. 12, 1938.

Cabral & Graham, of New Orleans, for appellant.

Charles J. Rivet and Louis H. Yarrut, both of New Orleans, for appellee.

JANVIER, Judge.

James Peyton alleges that while he was in the premises No. 2300 South Miro Street, as a guest of the tenant, he fell and sustained injuries as he attempted to descend a stairway at the front of the building; that his fall was caused by the "decayed and rotten condition of the porch"; that the said premises were owned by Guardian Homestead Association, which is in liquidation, J. S. Brock being the liquidator, and that, therefore, the said liquidator is liable for such physical injuries as he sustained and for his medical expenses. He prays for judgment for $705.

Defendant, in his answer, denied every allegation of plaintiff's petition, but later, on the trial below, admitted "that the premises in this case were owned by defendant at the time of the accident."

When the matter went to trial below, defendant contended that there had been no fall and, in the alternative, that if any injuries were sustained by plaintiff, they were not serious and that no substantial amount should, in any event, be awarded.

There was judgment for plaintiff in the sum of $225. He has appealed and defendant has answered the appeal and maintains in this court that there are so many suspicious circumstances shown in the evidence that we must conclude that no such accident occurred and, in the alternative, that if we believe that such accident did occur, we should reduce the amount of the judgment.

There is no doubt that there are many inaccuracies and contradictions in the record and that there are circumstances which well justify suspicion. For instance, though plaintiff definitely alleged in his petition that the fall caused him "to land violently on his right side", when he testified as to the accident he stated that "the edge of the porch just went and gave way and throwed me on my left side about six feet down the steps". Later in his testimony he stated that, as he started to descend the steps, he fell and "landed on my right side."

Another circumstance which is pointed to is his testimony that, though there was nothing to indicate that the steps were in any way defective, he was unusually careful in descending them. He stated that it "is a general rule of mine to watch where I step" and he also said, "if I walk at night I watch, because I might slip entirely". Just why he referred to the precautions which he usually takes in walking at night we are unable to understand since this accident occurred at 11:30 in the morning.

Another evident inaccuracy is shown in his contradictory testimony concerning his stay at the Charity Hospital, for, though it is evident that he did not remain there and at one point in his testimony he stated that he did not, at another point he said that when he reached the Charity Hospital "I stayed in bed".

In his petition he claimed $25 as the amount actually expended for medical services and in his own testimony he showed that he had been required to visit his doctor several times, but the doctor stated that he had seen Peyton only once and had sent no bill at all. He added that, if he had sent a bill, the charge would have been $10.

█ All of these circumstances tend to create suspicion and yet, in spite of them, our brother of the trial court reached the conclusion that there had been an accident due to the defective condition of the porch. We are unable to say that his conclusion is manifestly erroneous.

█ The injuries sustained were not serious. Though Peyton claims to have worked regularly at $4 a day as a roofer, the record shows that he worked only when his employer needed him and he could not state just how many days he had worked during the week preceding the accident. His own physician stated that he had examined the plaintiff on February 22, which was nine days after the alleged accident, and that at that time he was of the opinion that he would be disabled only until February 26, which would have been thirteen days in all. Under the circumstances we believe that the amount awarded is neither excessive nor inadequate.

█ Defendant maintains that any judgment which may be rendered against him should be ordered paid only in the regular course of his administration, whereas plaintiff contends that the judgment should be ordered paid by preference and priority over other creditors. No authorities have

been cited on either side on this question. We deem it best to leave the matter of the ranking of this claim to the court which has appointed the liquidator.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.